836 F.2d 1348
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Isaac SARGENT and Anna Sargent, Petitioners,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, United
States Dept. of Labor, Respondent.
 No. 86-3890.
 United States Court of Appeals, Sixth Circuit.
 Jan. 4, 1988.
 
 Before LIVELY, Chief Judge, WELLFORD, Circuit Judge, and ROBERT M. McRAE, Senior District Judge.*
 PER CURIAM:
 
 
 1
 Claimant, Isaac Sargent (Sargent) filed a black lung claim for benefits under 30 U.S.C. 901, et seq. in 1973 which was denied in 1976. A second application was filed with the benefit of counsel, Robert K. Roeller, in June of 1977. Roeller had the Sargents enter into a contingent fee agreement that Roeller receive 25% of any benefits received from the black lung disability claim. Sargent died on May 2, 1979 and his wife, Anna, has been substituted as claimant. Shortly afterward, benefits were approved after submission by attorney Roeller of additional medical evidence coupled with the passage of the Black Lung Benefits Reform Act of 1977, which greatly liberalized award of benefits. Anna Sargent received her first check of $25,869.70 of which Roeller allegedly placed $6,609.87 in an escrow account, representing what he conceived to be the agreed arrangement.[1]
 
 
 2
 On August 24, 1979, Roeller filed an application for approval of attorney fees with the Department of Labor requesting the $6,609.86 withheld for 73 claimed hours of legal services. Claims examiner Chaffins determined that the Black Disability Trust Fund was wholly liable for attorney fees and ordered release only of $500.00 to Sargent. On July 25, 1983, in a supplemental award, deputy commissioner Ratliff ordered a fee of $1,337.50 for Roeller based upon 26 3/4 hours of work at $50 per hour. He disallowed the balance of hours claimed as excessive or as irrelevant to the claim. The deputy commissioner further ordered Roeller to refund the money in escrow because the Black Lung Disability Trust Fund, not the claimant, was liable for the attorney fees. The net effect was to allow Roeller a total of $1,837.50 for his services.
 
 
 3
 Roeller requested reconsideration of the supplemental award, which was denied on September 7, 1983. On appeal to the Benefits Review Board, Roeller argued that the deputy commissioner's reduction in the hours submitted for legal services was arbitrary, capricious and an abuse of discretion and that he had no authority to set aside the fee agreement reached in 1976. The Board affirmed the deputy commissioner's decision on August 19, 1986. This appeal followed.
 
 
 4
 Roeller argues that the deputy commissioner has illegally voided his valid agreement in determining to pay fees based on an arbitrary hourly rate and based on an arbitrary and capricious disallowance of some of his claimed hours. He claims this is an abuse of discretion and illegal. See Marcum v. Director, OWCP, 2 BLR 1-894 (1980). He also challenges what he claims is a retroactive application of the Black Lung Act rules and regulations to this 1976 contract. He asserts that this is a due process denial and also an abrogation of his contract rights under the Constitution, because he had already completed his part of the contract.
 
 
 5
 The respondent concedes that Roeller may properly pursue the appeal since the case concerns attorney fees to be awarded for services provided to a federal benefits claimant, but respondent relies on Paul v. United States, 687 F.2d 364 (Ct.Cl.1982), cert. denied, 641 U.S. 927 (1983) for the proposition that the federal government can legitimately set limits upon the amount of fees an attorney receives for services rendered in assisting a client in securing a federal benefit. This principle applies, according to respondent, regardless of a prior private contract between the attorney and his client. Furthermore, respondent argues that the law governing Roeller's fee has remained the same during the pendency of the claim throughout counsel's representation. See 20 C.F.R. 720.226 (1973) and 20 C.F.R. 725.365 (1978).
 
 
 6
 The 1978 regulation, Sec. 725.365 states in part:
 
 
 7
 No fee charged for representation services rendered to a claimant with respect to any claim under this part shall be valid unless approved under this subpart. No contract or prior agreement for a fee shall be valid.
 
 
 8
 The regulation directs that an application for the fee sought should be made to the deputy commissioner or official before whom the services were performed and should itemize the work done and expenses incurred as well as the billing rate. This was the procedure which Roeller was directed to follow.
 
 
 9
 The principle urged by respondent has been applied in the award of fees under 42 U.S.C. Sec. 406 concerning social security benefits. See Gardner v. Mitchell, 391 F.2d 582 (5th Cir.1968); Robinson v. Gardner, 374 F.2d 949 (4th Cir.1967); Redden v. Celebrezze, 361 F.2d 815 (4th Cir.1966); Lambert v. Celebrezze, 361 F.2d 677 (4th Cir.1966); and, Blankenship v. Gardner, 256 F.Supp. 405 (W.D.Va.1966).
 
 
 10
 The Paul decision relied upon by respondent concerned attorney fees under the Alaska Native Claims Settlement Act. The Court of Claims there held that legislation placing limitations on attorney fees can apply to preexisting attorney fee contracts for contingent fees as well as those made subsequent to the legislation's passage. The court noted that there "is a long history of legislation and administrative action limiting an attorney's share of the funds he helped to procure from the Federal Government, despite a private contract he may have, or have had, with the client for whom he obtained the federal money." 687 F.2d at 367. See also Capital Trust v. Calhoun, 250 U.S. 208 (1919); Calhoun v. Massie, 253 U.S. 170 (1920) and Byrd v. Harris, 509 F.Supp. 1222, 1225 (E.D.Tenn.1981), aff'd mem., 701 F.2d 174 (6th Cir.1982).
 
 
 11
 The record shows that no coal mine operator could be identified who could be held liable to pay benefits to the claimant; thus, under 30 U.S.C. Sec. 392, the Black Lung Disability Trust Fund was liable for the attorneys fees. See Director, OWCP and Bivens, 757 F.2d 781, 784-86 (6th Cir.1985); Director, OWCP v. South East Coal Co., 598 F.2d 1046 (6th Cir.1979); Director, OWCP v. Leckie Smokeless Coal Co., 598 F.2d 881 (4th Cir.1979); Republic Steel Corp. v. U.S. Dept. of Labor, 590 F.2d 77 (3d Cir.1978).
 
 
 12
 The law is clear that the prior contingency fee contract was not enforceable and the Black Lung Trust Fund was instead liable for a reasonable attorney fee to be determined by respondent. We do not agree with Roeller's contention that the contract had already been completed because the funds in question were in an escrow account, and the contingent fee contract had never been approved by the Secretary of Health and Human Services.
 
 
 13
 Roeller contends that in the 1976-1977 time frame it took longer to prepare and process a Black Lung Benefits claim because of the government's unfamiliarity with the handling of these claims. He points out that a Black Lung Trust Fund was not then invisioned, and that both of the Sargents are now dead, complicating the proper disposition of the case. He asserts that he acted in accord with a "Black Lung Desk Reference" source with regard to his handling of the attorney fees.
 
 
 14
 Respondent maintains that the reduction from $91 to $50 of an allowed hourly rate was reasonable because this was a routine black lung case and because the benefits were awarded after passage of the more lenient provisions of the BRB Reform Act of 1977 and the submission of one additional medical report. Respondent claims that, in sum, the claimed fee rate and time involved were unreasonable and excessive. See Esselstein v. Director, OWCP, 676 F.2d 228, 229-30 (6th Cir.1982).
 
 
 15
 While Roeller has failed to discuss with any specificity the erroneous hourly reductions explained in detail by respondent, we believe his contentions have some merit under all the circumstances. From the deputy commissioner's report it does appeal that Mrs. Sargent contested some of the hours that Roeller submitted as being longer than the actual consultation claimed to have occurred. Some hours were properly excluded because they were for preparation of the fee petition. Reduction of hours claimed for research and investigation, however, appears to be unfounded and excessive.
 
 
 16
 This controversy has been unduly extended, and the court is anxious to resolve it without further delay or remand. We amend the allowance for fees to the total sum of $3,000.00. Mr. Roeller is ordered promptly to pay over the amount held in escrow to respondent. The fee award shall be promptly remitted to Mr. Roeller. No costs are assessed.
 
 
 
 *
 THE HONORABLE ROBERT M. McRAE, United States District Court for the Western District of Tennessee, sitting by designation
 
 
 [1]
 There is no adequate explanation in the record for the difference between $6,467.43, 25% of the $25,869.70 awarded, and the amount held in escrow-$6,609.87